## Keifer, Appellant, v. Cramer.

Argued January 9, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

Harold Boulton, with him Boulton & Boulton and W. Albert Ramey, for appellant.

John J. Pentz, with him Pentz & Silberblatt, for appellee.

OPINION BY MR. JUSTICE PATTERSON, March 24, 1947:

Robert F. Keifer, appellant, instituted this action in trespass against G. B. Cramer, appellee, to recover damages resulting from an alleged interference with, and induced breach of, a contract between appellant and one W. A. Keys. A jury returned a verdict for appellant. The court below granted appellee's motion for judgment non obstante veredicto, holding that the evidence did not warrant the jury's finding that appellee maliciously interfered with appellant's contract. This appeal followed.

Robert F. Keifer, appellant, was engaged in the business of mining, selling, and marketing bituminous coal. G. B. Cramer, appellee, was a contractor engaged in the business of strip mining bituminous coal. W. A. Keys was the owner of certain leasehold rights to coal lands situate in Jefferson County. On September 11, 1943, Keys and appellant entered into a written agreement whereby Keys was to pay appellant $2.15 net for each ton of coal strip mined and loaded into railroad cars. Pursuant to the right contained in said agreement to subcontract the actual stripping operations, appellant and appellee, the following day, viewed the premises to

be mined, went to Keys' office where appellee was apprised of the contents of the Keys-Keifer contract, and then orally agreed that Cramer, as sub-contractor, was to undertake the strip mining and loading of all the coal under Keys' land for $2 per net ton. Four days thereafter, appellee began stripping operations.

On October 1, Keys and appellant executed a supplemental agreement whereby Keys was to pay directly to appellee $2 and to appellant $.15 for each net ton stripped and loaded. Keifer testified that for the first three weeks, he conducted himself as superintendent of the operations and thereafter he was ignored and the work proceeded under the direction of appellee or his superintendent. On November 22, 1943, Keys and appellee entered into an agreement whereby five leases were transferred to appellee who agreed to assume payment of royalties required by the said leases, and to reimburse Keys for advance royalties paid on two of the leases and the cost of building the dock originally erected for loading coal mined under the prior agreement between Keys and Keifer.

Appellee was called as a witness by appellant as on cross-examination. He testified in detail regarding the various agreements, and further stated that the November 22nd agreement was proposed by Keys, primarily because of his poor health; that he, appellee, had no intention whatsoever of effecting any breach of contract between Keifer and Keys, and that nothing was said or done with regard to the existing agreements. Subsequently, Keys failed to pay Keifer the agreed $.15 per net ton. This action, based on the theory that appellee by concluding the agreement of November 22nd, had maliciously interfered with and induced a breach of the September 11th contract and the supplemental agreement of October 1st was instituted to recover the amount due appellant under the said prior agreements. The amount of tonnage involved was stipulated to be 41,-367.97 tons. The jury returned a verdict of $6,205.19.

One who intentionally and without reasonable justification or excuse induces one of the parties to a contract to refuse to perform according to the terms thereof, with resulting damage to the other party to the contract, may be held liable in an action to recover such damage. It is the intentional interference with known contractual rights which constitutes the legal wrong. "If words or acts of the defendant deprive the plaintiff of some advantage or benefit to which he is entitled by reason of his contract, the action is maintainable": *Klauder, Appellant, v. Cregar, et al.*, 327 Pa. 1, 8, 192 A. 667, 670. If damages result from the interference, a valid cause of action exists: *Klauder, Appellant, v. Cregar, et al.*, supra; *Wahl v. Strous*, 344 Pa. 402, 25 A. 2d 820, 821; *Caskie v. Philadelphia Rapid Transit Company*, 321 Pa. 157, 159, 184 A. 17, 18; *Ramondo et ux. v. Pure Oil Company*, 159 Pa. Superior Ct. 217, 48 A. 2d 156, 160; *Eddyside Company v. Seibel et al.*, 142 Pa. Superior Ct. 174, 15 A. 2d 691, 695.

In this class of cases, as in all others, there must be proof of damage resulting from the alleged interference with contractual relations. Consideration of the evidence adduced reveals that appellant has established merely a failure by Keys to perform his obligation to appellant under the supplemental contract of October 1, to wit, to pay him $.15 on every net ton stripped and loaded. The contract of November 22nd has not prejudiced any rights which the aforementioned contract secured to appellant. In *Wahl v. Strous*, supra, 344 Pa. 402, at p. 406, 25 A. 2d at p. 822, the contention was made that a settlement without the attorney's consent constituted interference with the attorney-client contract. What this Court said there applies with equal force to the instant case: ". . . to what extent he may now be entitled to recover such fees or compensation in an action on his contract is not here involved. Inasmuch as defendant company, . . . did not advise his clients not to pay him, nor represent that they would be under no

obligation to do so if they themselves effected the settlement, no breach of plaintiff's contract was induced by the company, and the court below properly entered judgment in its favor n. o. v."

Appellant's rights under the contract of September 11th, and the supplement thereto of October 1st, remain. There is no testimony that the contract of November 22nd was intended to or did affect existing contractual rights between appellant and Keys. Enforcement of those rights is not here involved. Proof of appellant's failure to enforce or of Keys' failure to perform the same does not constitute proof of damages in the instant action.

Judgment affirmed.